UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE MILLER,

                Petitioner,                    Case Number 21-11458
                                                Honorable David M. Lawson

v.

BECKY CARL,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

       Dwayne Miller was charged with robbing a bank in Warren, Michigan. After protracted proceedings in the Macomb County, Michigan circuit court during which Miller was represented by four different appointed attorneys, he pleaded guilty to one count of armed robbery. The trial court denied his subsequent motion to withdraw his guilty plea. Finding no relief in Michigan's appellate courts, Miller filed this habeas corpus petition under 28 U.S.C. § 2254 arguing that his Sixth Amendment right to effective assistance of counsel was violated when the trial court declined to appoint a fifth attorney. Because the state courts correctly applied governing federal law when they rejected Miller's claim, the Court will deny the petition.

I.

       On November 15, 2017, a teller at a Huntington Bank in Warren was approached by a man who appeared to be holding gauze to his face. The man was later identified by two bank employees as Miller. After asking about opening an account, Miller splashed gasoline on a teller's face, dragged her around the counter, brandished a lighter, and threatened to "light this bitch up," unless the other employees filled a duffel bag with cash. The employees complied, and Miller fled the bank. Miller was arrested four days later during a traffic stop in possession of $4,700 in cash.

Miller originally was charged with bank robbery and other offenses, but the charges were later amended to one count of armed robbery.

Attorney R. Timothy Kohler was the first attorney appointed to represent Miller.  Kohler appeared at several pretrial proceedings.  As the first trial date approached, Miller expressed dissatisfaction with Kohler.  And a week before trial was set to commence, Miller informed the court that Kohler was "fired."  The court found that there had been a breakdown in the attorney-client relationship and granted Miller's motion for a new court-appointed lawyer.

The court appointed attorney Randy Rodnick to represent Miller.  At the next pretrial hearing, held six days after Kohler was released, Miller announced that Rodnick also was "fired," and Miller refused to cooperate with Rodnick.  The court denied Miller's request for a new lawyer, telling him that "you're going to give him the benefit of more than two seconds . . .; you just met him today."  ECF No. 13-11, PageID.371.

The record does not indicate that the State conducted any pretrial identification procedures, like a lineup or photographic show up.  But some of the bank employees identified Miller at the preliminary examination, where he apparently sat in the defendant's chair in the courtroom.  At the defense's request, the trial court held two hearings to determine if that identification was unduly suggestive and if the witnesses' in-court identifications had an independent basis, known as a *Wade* hearing, after the procedure outlined in *United States v. Wade*, 388 U.S. 218 (1967).  Attorney Rodnick represented Miller at the first *Wade* hearing.  Miller, however, persisted in his request to fire Rodnick.  The trial court ultimately acceded and told Miller, "I'll give you one more attorney."  ECF No. 13-13, PageID.444, 453-55.

The court next appointed attorney Michael Dennis, who appeared for a pretrial conference one week later.  At the next hearing date, Miller announced, "Mr. Dennis is fired."  ECF No. 13-

15, PageID.469. The court told Miller that it would not appoint another attorney. Miller responded that he would then represent himself. The court attempted to conduct a colloquy to determine whether Miller was voluntarily waiving his right to counsel, but the court determined that Miller's equivocal statements during the colloquy indicated that he did not wish to represent himself and that he preferred the appointment of a different attorney.

At the next hearing date, attorney Dennis informed the court there had been a further breakdown in the relationship with Miller, and that Miller refused to meet with him. Miller told the court that because he believed he was not going to get a fair trial, he wished to plead guilty. After further discussion, the court decided to appoint new counsel, and Miller was referred to the Center for Forensic Psychiatry for an evaluation on whether he was competent to stand trial.

Attorney Jeffrey Cojocar was next appointed to represent Miller. He appeared at the competency hearing, where the court accepted the Forensic Center report finding Miller competent. Cojocar indicated that he was attempting to negotiate a plea, and he solicited a commitment from the court that it would sentence Miller to the bottom third of the 126-to-210-month guidelines range if he were to plead guilty.

At the next hearing date, predictably, Miller informed the court that he was dissatisfied with attorney Cojocar. He said that Cojocar was ineffective at the *Wade* hearing on his challenge to the admissibility of the identification testimony. Cojocar replied that Miller's account of their conversations was "100% false." ECF No. 13-18, PageID.526.

The second part of the *Wade* hearing was held two weeks before trial was set to begin. At the start of the proceeding, Miller informed the court that Cojocar was "fired," and that Cojocar was only interested in discussing the sentencing guidelines and would not accept his views on how to handle the continuation of the hearing. Cojocar disputed Miller's allegations. The court

informed Miller that he would not appoint another attorney, finding that it was Miller who was causing the difficulties with the attorneys appointed to represent him.

Miller informed the court that he would then be left to represent himself.  But again, as the court conducted a waiver of counsel colloquy, Miller asserted that he preferred to have an attorney represent him, and he was only requesting to represent himself because he was dissatisfied with Cojocar.  The court denied the request for self-representation because Miller did not unequivocally request to represent himself.  Cojocar then handled the continuation of the *Wade* hearing, after which the court found the identification testimony would be admissible at trial.

Miller's jury trial commenced about three weeks later, with Cojocar appearing as Miller's attorney.  Miller personally addressed the court, but he did not renew his request to represent himself, nor did he challenge the fact that Cojocar was appearing as his counsel.  When the trial was underway, Miller informed the court that he wished to plead guilty and accept the court's sentencing evaluation.  During the plea colloquy, however, Miller indicated that he felt threatened to plead guilty because other inmates at the jail threatened to kill him if he did not do so.  Because of that statement, the court did not accept Miller's plea and proceeded with trial.  The first witness to testify, bank manager Heidi Wayland, described how Miller sprayed gasoline on a teller and threatened to light her on fire.  A video recording of the incident taken from the bank security system was played for the jury.

At the start of the second trial day, Miller again expressed his desire to plead guilty.  The court asked about the threats Miller revealed the day before, and the following exchange took place:

> THE COURT: Well, Mr. Miller, I have to ask you, you said that there was [sic] threats yesterday.  Have there been threats or some sort of coercion or inducement to get you to plead guilty today?

> MILLER: I take that back, your Honor, everything I said yesterday. I'd like to apologize also for my behavior throughout this whole — for the past year going through this case. And my pleading guilty is on my own behalf.
>
> . . .
>
> THE COURT: . . . Mr. Miller, if there is someone that is pressuring you, if there is someone that is promising you things, anything, I need to know. Because I don't want you to enter into a guilty plea — this is a big step, for you to enter into a guilty plea, if you don't want to do it.
>
> MILLER: Yes, your Honor. But, also if the jury was to find me guilty, that would be a big step too. So, I'm pleading guilty on my own behalf. No one is pressuring me. No threats have been made. No promises have been made. . . .

ECF No. 13-22, PageID.955-56.

Defense counsel also expressed his belief that Miller had a new appreciation for his situation:

> COJOCAR: Judge, for your comfort, I can let the Court affirmatively know, I went over all options, rights, positions from both sides, over and over with Dwayne. I've tried to explain stuff to him. I've explained to him that I am more than prepared. I've got everything ready for today, for tomorrow, and so forth, his options.
>
> I think he's appreciating things more once he's here live and sees this trial going forward and sees the video and so forth, sees the jurors. You know, we had a really healthy discussion today, yesterday as well.

*Id.* at PageID.957.

The court asked Miller whether it was correct that he had recently consulted with his mother, and whether he felt pressured by her to plead guilty. Miller denied that he felt pressured by her. The court then began the plea proceeding and placed Miller under oath.

Miller denied that he was taking medications or that he was under the influence of alcohol or drugs. The court informed Miller that he was pleading guilty to armed robbery, an offense punishable by life imprisonment, and that the court would sentence Miller to the bottom third of the sentencing guidelines which had already been calculated. Miller said he understood.

Miller acknowledged that he had the right to counsel and that by pleading guilty he would not have a trial.  He acknowledged and waived other rights, including: the right to a jury trial, the right to a bench trial, the right to be presumed innocent, the right to have the prosecutor prove him guilty beyond a reasonable doubt, the right to appearance and to confront witnesses against him, the right to call witnesses and present evidence, the right to order witnesses to appear, the right to testify on his own behalf, and the right to remain silent.  Miller acknowledged that by pleading guilty he would have a felony conviction on his record, and that any appeal would be by leave of court rather than by right.

Miller confirmed that, other than what was placed on the record, no promises, threats, inducements, or coercion were causing him to enter his plea.  Miller agreed that he was pleading guilty of his own freewill and choice.  Miller then testified that on November 15, 2017, he committed a robbery at the Huntington Bank in Warren by using a lighter and gasoline as a weapon and putting a teller in fear.  The court accepted Miller's plea.

Before the court adjourned, it gave Miller another chance to reveal the existence of anything not stated on the record that might have induced his plea:

> THE COURT: Mr. Miller, before we break, I just want to make sure. You're not going to get another chance to talk about coercion or promises or anything.  Is there anything that was said by your mother, family members, inmates, anyone, that is making you enter into this plea?
>
> MILLER: No.
>
> THE COURT: And is it your own free choice to enter into this plea?
>
> MILLER: Yes.
>
> THE COURT: All right. We'll see everyone at sentencing.

*Id*. at PageID.965.

Miller subsequently was sentenced to a minimum prison term of 108 months and a maximum of 240 months, which was consistent with the sentencing evaluation.  At the sentencing proceeding, Miller addressed the court, but he did not complain about his counsel's preparation for trial or that his plea was the product of coercion.

After the sentencing hearing, however, through appointed appellate counsel (Miller' fifth court appointed attorney), Miller filed a motion to withdraw the plea.  At the motion hearing, Miller testified how he was forced to plead guilty due to attorney Cojocar's ineffectiveness.

> MILLER: The reason for me filing — the reason why I wanted to raise the issue of ineffective deficient counsel was Mr. Cojocar failed to investigate many things.  He failed to — I remember mentioning this on December 17th — I believe it was December 17th, 2019, a no contest plea, but it was not allowed.  Then the next day I pleaded guilty because I seen the strategy that my attorney had, which was no strategy.  He was just going off freelance, I guess you would say, I guess you could call it, but — and that was the reason that the plea of guilty.
>
> And as far as the self-representation goes I asked to represent myself July 23, I believe, with Mr. Rodnick, I believe so, or I don't know if it was Mr. Rodnick or Mr. Dennis, and I believe you denied it then.
>
> . . .
>
> The plea that I answered I'd like to say it was more of a knowing that my counsel Mr. Cojocar was not going to represent me, knowing the risk of me not having a lack of representation and a prosecutor with a full strategy I believe at the time was Ms. Doddamani, she had a strategy, my counsel did not have no strategy.  So, it was best interest of me to plead guilty.

ECF No. 13-24, PageID.999-1002.

The court denied the motion to withdraw the guilty plea, finding that Miller failed to reveal this source of coercion at the plea hearing, and that his requests to represent himself were equivocal:

> THE COURT: All right. The defendant from the very beginning has never been hesitant to state whether when he felt his constitutional rights were being impinged, his right to counsel, at every step during these proceedings Mr. Miller has indicated that if he was dissatisfied with an attorney, and that happened on I believe four

separate occasions in which he had voiced his discontent and had indicated that he had fired his counsel. On the fourth occasion that occurred the Court had — had reminded Mr. Miller and as it reminded Mr. Miller a number of times that he doesn't have a right to any counsel. He has a right to court appointed counsel, but he doesn't just get a counsel of his choosing, and at that — at that point the — the defendant equivocated and stated well, then I want to represent myself, and when the Court posed the question well, you still want an attorney, just a different attorney than Mr. Cojocar, the answer of course was yes. And we had gone over that a number of times.

Under People versus Russell, 471 Mich. 182, pages 192 through 193, it's a 2004 case, the Court — the Court was without any choice but to — to allow Mr. Cojocar to — to continue to represent the defendant. Of course, I suppose there is always the possibility of a different attorney to represent Mr. Miller, but as the Court stated and made known for the record that Mr. Miller just wanted to — to have an attorney of his choosing, and that's not what the law requires.

So far from what the Court has heard today, and there's been no affidavit submitted only what the defendant has tendered in open court as far as his testimony under oath, there is nothing to indicate that Mr. Cojocar made any representations or conducted himself in a manner which would force the defendant to enter into this guilty plea. There is no misrepresentation as to guidelines. There's no misrepresentation as to what the Court would do, and the Court was very specific that if there was any coercion, any elements of — of force that was rendering the defendant's plea to be involuntary, that the defendant had to let the Court know at the time of the plea taking. I think this bifurcation is — is appropriate that the prosecution has done. Was there a defect in the plea? Was there ineffective — or was there a waiver of counsel? The Court addressed the waiver of counsel. The Court found that it was equivocal in regard to the defect in the plea proceedings. The Court is — is satisfied that the Court complied with every — with the requirements of 6.302, and the defendant had indicated that there was no force or coercion, that it was his own free will that he was entering into this guilty plea. So, the Court does not find that — that there is a Constitutional Fifth Amendment/Sixth Amendment issue in regard to the — the defect in the procedure. The Court does believe that the plea was knowing and voluntary and the Court's going to deny the motion to withdraw the defendant's plea.

*Id*. at PageID.1003-05.

Through his appellate counsel, Miller then filed an application for leave to appeal in the

Michigan Court of Appeals, raising one claim:

I. The trial court abused its discretion in denying Mr. Miller's motion to withdraw his plea or for a *Ginther* hearing. Mr. Miller's no contest [sic] plea was involuntary

where his attorney was not "working for" him, the court would not appoint substitute counsel, and where the court would not allow him to represent himself.

The Michigan Court of Appeals denied Miller's application for leave to appeal "for lack of merit in the grounds presented." *People v. Miller*, No. 351204 (Mich. Ct. App. Dec. 12, 2019). Miller appealed to the Michigan Supreme Court, but his application for leave to appeal was denied by form order. *People v. Miller*, 944 N.W.2d 712 (Mich. 2020).

Miller filed his petition for a writ of habeas corpus raising one claim, which he describes simply as "Ineffective Assistance of Counsel." Pet. at 5, ECF No. 6, PageID.16. In his supporting brief, he restates the single ground as follows:

I. The trial court violated the Sixth Amendment right to counsel by refusing to appoint substitute counsel.

*Id.* at PageID.31. Miller asserts that he was entitled to the appointment of a fifth attorney because Cojocar was not prepared for trial in that he: (a) failed to impeach the bank manager Wayland at trial with respect to prior inconsistent statements, (b) failed to provide Miller with a copy of the *Wade* hearing transcript, and (c) failed to interview Elisa Elder, a bank teller, regarding her description of the perpetrator.

## II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). AEDPA provides a "highly deferential standard for evaluating state-court rulings." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). That means federal courts

give the state court "the benefit of the doubt," *ibid.*, applying that "statutorily prescribed deference," *Michael v. Butts*, 59 F.4th 219, 225 (6th Cir. 2023) (citing 28 U.S.C. § 2254(d); *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018)).

The state appellate courts denied Miller relief in form orders, which did not discuss his arguments. But when "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Here, though, the trial court announced its reasoning on the record when it denied Miller's motion to withdraw his guilty plea, rejecting his arguments based on the Sixth Amendment. "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). This Court, then must "look through" the form orders to the last reasoned decision of the state court. *Wilson v. Sellers*, --- U.S. ----, 138 S. Ct. 1188, 1194 (2018). It is the trial court's decision, therefore, that is entitled to deference under AEDPA.

A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was

so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

### A.

Miller's arguments are based on the foundational premise that none of the lawyers who represented him, particularly the last one, provided constitutionally adequate representation. He posits that the trial court committed constitutional error therefore by not appointing a fifth lawyer, and because he was denied that appointment, his guilty plea was involuntary. The latter conclusion flows from the idea that if Miller had to proceed to trial with a bad lawyer, he had no choice but to throw in the towel and plead guilty.

Let's examine the first premise. A federal habeas petitioner asserting a violation of his Sixth Amendment right to the effective assistance of counsel must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that

'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). And where the challenged conduct amounts to legitimate trial strategy, habeas courts will not find that counsel performed deficiently. *Robins v. Fortner*, 698 F.3d 317, 337-38 (6th Cir. 2012).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective-assistance-of-counsel claims is relatively rare because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)). Under AEDPA, obtaining relief under *Strickland* is even more challenging because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Miller trains his complaints about attorney performance upon attorney Cojocar. He contends that Cojocar ineffectively challenged the testimony of Heidi Wayland, the only witness

to testify at his pretermitted trial.  He says that Cojocar failed to provide him with a copy of Wayland's testimony at the *Wade* hearing, and that he failed to confront her on cross-examination with inconsistent statements she made about seeing a scar on the perpetrator's face.

At the first *Wade* hearing, Wayland testified that she could see the perpetrator's eyes because they were not covered by gauze, and she did *not* see any scar near his eyes, nor did she tell the police about seeing a scar.  Then at trial, Wayland testified that she did see that Miller had a scar near his eyes, but that she did not tell the police about it.  Miller believes that the inconsistency was important and that Cojocar failed to exploit it adequately to challenge Wayland. And Miller points to the inconsistent testimony as an example of why it was important for him to have received a copy of the *Wade* hearing transcript before trial.

The record undermines this claim.  In fact, it was defense counsel who brought up the subject of whether Wayland reported seeing a scar on the perpetrator.  Nothing about a scar was mentioned by Wayland on direct examination.  Rather, on cross-examination, it was defense counsel who first asked Wayland whether she saw a scar.  When Wayland indicated that she did recall seeing a scar, he challenged her regarding her contrary testimony at the *Wade* hearing and her failure to include it in her description to police.  Defense counsel also challenged Wayland's identification testimony by referencing other features of her statement to police and prior testimony describing the assailant.  There was no deficient performance here.  Rather, the record shows that counsel was familiar with the witness's prior statements and testimony and adequately challenged her identification testimony.

Next, Miller says that Cojocar failed to interview another employee of the bank, Elisa Elder.  Elder did not testify either at the preliminary examination or at the *Wade* hearing. According to Miller, Elder told the police that the perpetrator was very dark complected and had

dark eyes.  Miller says that he is not very dark complected and that he has hazel eyes.  Miller believes that these discrepancies could have been used in his defense to undermine the identification testimony of the other two bank employees, Wayland and Hudson.

There is no indication in the record that Cojocar was unaware of Elder and her statement to police.  To the contrary, the pretrial record, much of which involved litigation over discovery and the admissibility of the identification testimony, shows that counsel was well familiar with the police reports and their contents.  Moreover, Elder's description of the perpetrator was not that far out of line with Miller's appearance; nothing she said categorically excluded Miller as the perpetrator.  Decisions as to what evidence to present and whether to call certain witnesses are generally presumed to be a matter of trial strategy, although such decisions must be reasonable. *See Roe v. Flores–Ortega*, 528 U.S. 470, 481 (2000).  The decision not to call witnesses or present other evidence may constitute ineffective assistance of counsel only when it deprives a defendant of a substantial defense.  *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).  That did not happen here. Defense counsel reasonably might have decided not to call another witness who would describe the horrifying incident at trial.  That strategic choice does not amount to deficient performance.

Miller has not shown that Cojocar's performance was substandard.  Miller's right to the effective assistance of counsel was not abridged.

## B.

Nonetheless, should the trial court have appointed a fifth lawyer for Miller?  Neither the Constitution nor the laws of the United States would have compelled that move.  The Sixth Amendment includes an "implicit" guarantee that a defendant may hire an attorney of his own choosing. *Linton v. Perini*, 656 F.2d 207, 208 (6th Cir. 1981).  But "[t]he right to the assistance

of counsel at trial does not guarantee that a criminal defendant will be represented by a particular attorney" whom he does not retain himself. *Serra v. Mich. Dep't of Corrs.*, 4 F.3d 1348, 1351 (6th Cir. 1993); *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) (holding that "impecunious defendants [do not] have a Sixth Amendment right to choose their counsel" and "have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."). Simply stated, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).

There are times when a trial judge should appoint a different attorney for a defendant. Keep in mind, though, that "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). A defendant who wants a different lawyer therefore must "show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution" of counsel. *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985); *accord Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011). A trial court's denial of a request to substitute counsel is evaluated against the following factors:

> (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

*Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011) (quoting *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009)).

Miller made known his desire to "fire" attorney Cojocar three weeks before his trial was to start, and the trial judge asked Miller why he was dissatisfied. Miller complained that the last time he met with counsel, counsel was arrogant, only wanted to talk about the sentencing guidelines and convince him not to go to trial, did not accept Miller's list of questions for the witnesses, and did not want to go over the prior *Wade* hearing transcript. The trial court solicited a response from attorney Cojocar, who explained that he had recently visited Miller in jail to prepare for the *Wade* hearing. He brought with him a transcript from the earlier hearing and asked whether Miller had questions he wanted asked at the hearing, but Miller said that he was tired and would write something out later for counsel. Cojocar declared that "everything he said I said didn't happen." ECF NO. 13-20, PageID.562. Cojocar said that he tried to speak to Miller about the *Wade* hearing, and the sentencing agreement, and he told Miller that if he didn't accept the plea deal, then they would have to prepare for trial.

> After hearing that explanation, the Court denied the request to appoint a new attorney:

> THE COURT: Mr. Miller, you've had three attorneys, and there's been one constant — three prior attorneys, and there's been one constant as far as them being relieved of their responsibilities of representing you, and it's you. It's — you're the only person that's the same in — in all three instances, that you can't work with them and they can't work with you. At some point it has to end. I'm not appointing new counsel for you.

*Id.* at PageID.564.

On this record, that decision should not be second-guessed by a federal habeas court. The state trial judge conducted a proper inquiry into Miller's complaint. It afforded Miller an opportunity to fully explain the reason for his dissatisfaction with his counsel, and then the court allowed counsel to respond. The exchange revealed some conflict between Miller and his fourth lawyer, but it did not indicate the sort of complete breakdown in communication necessitating substitution of counsel. Counsel said that it was difficult to work with Miller, but he did not

indicate that Miller was making it impossible for him to prepare for the proceedings.  There certainly was some friction between Miller and Cojocar, but Miller had no right to a meaningful relationship with his attorney. *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983).  Furthermore, the record indicates that the discontent with the relationship was largely Miller's fault.  He apparently showed disrespect to all of his prior attorneys on several occasions, causing the difficulties when they attempted to communicate with him.  "A disagreement between the defendant and defense counsel over legal strategy does not constitute good cause requiring substitution of counsel, nor does a defendant's unilateral decision not to cooperate with court appointed counsel." *Caldwell v. Phelps*, 945 F. Supp. 2d 520, 537 (D. Del. 2013) (citing *United States v. Goldberg*, 67 F.3d 1092, 1098-99 (3d Cir. 1995); *United States v. Gibbs*, 190 F.3d 188, 207 n.10 (3d Cir. 1999)).

Miller was given a full opportunity to support his request for another attorney, but he failed to show that the conflict between him and attorney Cojocar was so great that it resulted in a total lack of communication, preventing an adequate defense. *See United States v. Jennings*, 83 F. 3d 145, 149 (6th Cir. 1996).  His complaints against Cojocar involved differences of opinion on trial strategy and the risks of going to trial compared to the plea offer, rather than any irreconcilable conflict or total lack of communication.  The record does not demonstrate that the disagreements between Miller and his attorney rose to the level of a conflict that necessitated the substitution of counsel. *See United States v. Sullivan*, 431 F.3d 976, 981 (6th Cir. 2005).

And it appeared that the storm eventually blew over by the time trial was to begin.  After the second part of the *Wade* hearing, Miller never complained about disagreements with his attorney until he moved to withdraw his guilty plea after sentencing.  Notably, when he abandoned his first bid to plead guilty, Miller complained about being threatened by other inmates, but he did not assert that he felt forced to plead guilty because his attorney was unprepared for trial.  After

- 17 -

the first witness testified at trial, and Miller finally pleaded guilty, he again never complained about his attorney being the cause of his change of heart.  Cojocar's statement to the court before the guilty plea was entered indicated that the relationship had improved dramatically.  Miller did not contest that assertion.  The trial court was entitled to rely on those representations.

The trial judge's decision to deny Miller's request for yet another appointed attorney reasonably applied federal law.

C.

That leaves the question whether Miller's guilty plea was voluntary.

The Fifth Amendment requires that a guilty plea must be voluntary, knowing, and intelligently made.  *United States v. Broce*, 488 U.S. 563, 569 (1989); *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)).  A guilty plea is voluntary if the defendant understands the nature of the charges against him and the constitutional protections that he is waiving.  *Henderson v. Morgan*, 426 U.S. 637, 645, n.13 (1976).  A plea is knowing and intelligent if it is done "with sufficient awareness of the relevant circumstances and likely consequences."  *Brady*, 397 U.S. at 748 (1970).

The trial court took pains to ensure that Miller knew exactly what he was doing when he entered his guilty plea.  And it is abundantly clear that Miller was fully aware of his options, had a complete understanding of the consequences, and made the decision that his interests were better served by pleading guilty instead of continuing with the trial.  It is true that a defense lawyer's bad advice about the consequences of a conviction can undermine the voluntariness of a guilty plea.  *See Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985).  But that did not happen here.  And the trial judge was particularly sensitive to the possibility that outside pressure could have affected Miller's judgment.  When the court provided Miller every opportunity to discuss that factor, Miller denied

that his decision was the result of anything but his own free will.   "[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry."  *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)).   The trial court's conclusion that Miller's guilty plea was knowing and voluntary, and therefore would not be withdrawn, faithfully applied governing federal law.

III.

The petitioner's claims do not present a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d).   The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.   The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson<br>DAVID M. LAWSON<br>United States District Judge

Dated:   April 19, 2023